UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Orlando Division

*Filed Electronically*

| | |
|---|---|
| ANDREW BUDZINSKI, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | Civil Action No. 6:23-cv-01039 |
| ) | |
| MYSTIC POWERBOATS INC., ) | |
| MARINEX INTERNATIONAL, INC., ) | |
| MARK BELISLE, and ) | |
| JOHN COSKER ) | |
| Defendants. | |

**VERIFIED COMPLAINT
FOR INJUNCTIVE RELIEF
AND DAMAGES**

Plaintiff Andrew Budzinski, an individual, hereby applies to this Court for temporary and permanent injunctive relief, monetary damages, and all other relief to which he may be entitled by law. In support therefore, Plaintiff states as follows:

**INTRODUCTION**

1. This is a civil action arising from Plaintiff's purchase of a $2.6 million custom-built powerboat that is presently located in DeLand, Florida. This unique, one-of-a-kind vessel was constructed specifically to Plaintiff's specifications, and Plaintiff has paid a deposit of more than $1.8 million toward the purchase of the boat. Defendants, however, have wrongfully retained Plaintiff's money and the boat, while separately conspiring to sell the same boat to another buyer. Plaintiff believes the vessel will be transferred within days of this filing. Plaintiff seeks this Court's immediate intervention to maintain the status quo and halt the transfer of this vessel while the parties' respective rights to the vessel and Plaintiff's deposit are determined. Plaintiff also

seeks damages for the Defendants' unjust enrichment, conversion, and conspiracy to defraud Plaintiff of his money.

## PARTIES

2. Plaintiff Andrew Budzinski is an individual who maintains his primary residence and domicile in the Republic of Cyprus.

3. Defendant Mystic Powerboats Inc. ("Mystic Powerboats") is a Florida corporation with its principal place of business at 1848 Patterson Avenue, Deland, Florida 32724. Mystic Powerboats may be served through its registered agent John M. Cosker at 195 Lakeside Dr. West, Port Orange, Florida 32128, or wherever it may be found.

4. Defendant John Cosker is an individual who maintains his primary residence and domicile in Volusia County, Florida. Cosker is the founder, principal owner and president of Mystic Powerboats. John Cosker may be served at 195 W Lakeside Dr., Port Orange, Florida 32128, or wherever he may be found.

5. Defendant Marinex International, Inc. ("Marinex") is a Texas corporation with its principal place of business at 5812 Westmont Drive, Austin, Texas 78731. Marinex may be served through its registered agent Mark J. Belisle at 5812 Westmont Drive, Austin, Texas 78731, or wherever it may be found.

6. Defendant Mark Belisle is an individual who maintains primary residence and domicile in Austin, Texas. Belisle is the President and Secretary and principal owner of Marinex. Mark Belisle may be served at 5812 Westmont Drive, Austin, Texas 78731, or wherever he may be found.

## JURISDICTION AND VENUE

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims set forth in this Complaint occurred in this judicial district.

8. The Orlando division is the appropriate division for this action under Local Rule 1.04(a), because the property that forms the subject matter of this action is located in Volusia County.

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. There is complete diversity among the opposing parties and the amount in controversy exceeds $75,000.

10. This Court has personal jurisdiction over Belisle and Marinex pursuant to, without limitation, Fla. Stat. § 48.193(1), (2), (6), and (7) because, on information and belief, Belisle and Marinex operates, conducts, engages in, or carries on business in the State of Florida and because, on information and belief, Belisle and Marinex committed tortious acts in the State of Florida pertaining specifically to the commercial transaction forming the subject matter of this Complaint.

## FACTUAL ALLEGATIONS

11. This Complaint seeks emergency and permanent relief for Defendants' conspiracy to misappropriate $1.813 million of Plaintiff's money as a payment towards purchase of a custom powerboat that Defendants are now selling to a third-party buyer.

12. On November 2, 2022, Plaintiff contracted with non-party Marine Partner Network GmbH & Co. KG ("MPN"),[1] a German corporation, to purchase a custom 2023 Mystic 5200 vessel, Hull ID DZNM5202C123 (the "Vessel") for the contract price of $2,590,000 (the "MPN Agreement").[2]

---

[1] Plaintiff is separately pursuing all available legal recourse against MPN in Germany.
[2] The MPN Agreement is attached hereto as **Exhibit A.**

3

13. At the time, MPN's principal, Alfred Zurhausen, told Plaintiff that MPN was a licensed official dealer of Mystic-branded boats in Europe.

14. Mr. Zurhausen also advised industry media sources that he was "thrilled to be the official dealer" for Mystic in Europe.[3]

15. Mr. Zurhausen additionally presented Plaintiff with what was purported to be an official Mystic Poweboats price list that identified the Vessel's manufacturer-set purchase price as $2,590,000.

16. These representations were false, MPN knew they were false, and MPN made these false representations to Plaintiff to induce Plaintiff to pay far more for a vessel that a true Mystic licensed dealer would have charged.

17. MPN was not a licensed or official dealer of Mystic Powerboats. As Mr. Cosker, Mystic's owner, later advised Plaintiff in an email:

> I have no and have never had any dealer agreement with Alfred.
> …
> MPN was not a stocking dealer and will be receiving a cease and desist from Mystic to do a promotion or representation of Mystic going forward.[4]

18. The purchase price quoted by MPN to Plaintiff was $200,000 higher than the price Mystic set for a new M5200 model boat.

19. Plaintiff agreed to pay for the boat in three installments: (a) the first payment of $1 million; (b) a second payment of $813,000; and (c) a final payment of $477,000. *See* **Ex. A**.

20. Consistent with his contractual obligations, Plaintiff paid the first and second payments by wire transfer to MPN, paying a total of $1,813,000 down for the Vessel.[5]

---

[3] *See* SPEEDONTHEWATER.COM, *Marine Partner Network to Handle European Sales for Mystic and Outerlimits* (April 25, 2022), attached as **Exhibit B**.
[4] Cosker/ Budzinski emails, May 26, 2023, attached as **Exhibit C**.
[5] *See* Wire Transfer Confirmations, attached as **Exhibit D**.

4

21. Based on MPN's verbal and written representations, Plaintiff believed that MPN was a licensed Mystic broker and would transfer his money to Mystic to begin constructing his dream Vessel. Neither were true.

22. Unbeknownst to Plaintiff at the time, MPN funneled Plaintiff's money to unrelated intermediaries, Defendants Marinex and/or Belisle.

23. MPN and Defendants acted in concert and structured the transaction so that Defendants Marinex and/or Belisle would be the purchasers and record owners of the Vessel, not Plaintiff. Neither MPN nor Defendants disclosed or advised Plaintiff of the existence of Defendants Belisle or Marinex's involvement in the transaction, prior to the time that Plaintiff agreed to purchase the Vessel, or the fact that Defendants Belisle and/or Marinex—and not Plaintiff—would receive title to the Vessel.

24. While Plaintiff believed that the Vessel would be custom constructed for him, Defendants had other ideas. Defendant Marinex had a preexisting deal with Mystic Powerboats to purchase the Vessel under a Sales Agreement dated April 2, 2022 (the "Marinex Sales Agreement")[6].

25. Defendant Marinex purchased the Vessel from Mystic Powerboats at an enormous discount, agreeing to pay a "FINAL SALES PRICE" of $1,641,6449. This is nearly $1 million less than Plaintiff was to pay for the Vessel.

26. On information and belief, Defendants Belisle and/or Marinex intended to tout the Vessel at boat shows and other similar opportunities throughout Europe to garner a market—buyers for Mystic Powerboats. Defendants Cosker and Mystic Powerboats were aware of and participated in the marketing plan.

---

[6] The Marinex Sales Agreement is attached hereto as **Exhibit E**.

5

27. Rather than proceed with using the Vessel at European marketing circuits, it appears that Defendants decided to sell the Vessel to a willing and able buyer—Plaintiff, a faster way to garner sales and visibility in the European market. Further, on information and belief, Defendants Belisle and Marinex conspired with and induced MPN to sell the Vessel to Plaintiff at an extremely inflated purchase price while concealing the actual price from Plaintiff through a "straw buyer" arrangement with the intent to share in the benefits of Plaintiff's overpayment.

28. Upon information and belief, Defendants Belisle and/or Marinex sent some or all of Plaintiff's $1,813,000 to Cosker and/or Mystic Powerboats to purchase the Vessel.

29. Upon receiving Plaintiff's deposit, Defendants Cosker and/or Mystic Powerboats began customizing the Vessel, a 52-foot tender/ chase boat with a center console and four 600-hp Mercury Marine outboard engines.

30. Over the subsequent months, Plaintiff corresponded with MPN and Cosker/Mystic Powerboats regarding various specifications and details of his custom-built Vessel. Belisle was included on some of the emails, and Plaintiff believed that Belisle was a part of Mystic Powerboats. Indeed, why else would Belisle be included.

31. At no time during these routine discussions was Plaintiff advised of the role of Defendants Belisle and Marinex in the transaction.

32. At no time during these routine discussions was Plaintiff advised that Mystic Powerboats had actually agreed to sell the Vessel to Marinex for nearly $1 million less than Plaintiff had been asked to pay. Or that one or more Defendant stood to reap a profit of nearly $1 million by misrepresenting the Vessel's price.

33. At time no during these discussions was Plaintiff told that the title to the Vessel would pass to Defendants Belisle and/or Marinex.

34. Under the MPN Agreement, MPN had promised to deliver the Vessel to Plaintiff by January 2023. The boat was not delivered to Plaintiff. During that same period of time, Plaintiff became suspicious and began investigating MPN. Plaintiff learned that MPN was not a licensed Mystic dealer, MPN had substantially inflated and lied about the Vessel's purchase price and value, and instead of brokering directly with Mystic, had involved Defendants Belisle and/or Marinex in the transaction. Plaintiff was furious.

35. Plaintiff demanded MPN return his $1.813 million deposit. Plaintiff made the same demands of all Defendants. Each refused to return Plaintiff's money or remained silent. When Plaintiff's demand for return of his money was unsuccessful, Plaintiff demanded delivery of the Vessel.

36. In response to Plaintiff's request, Belisle and/or Marinex attempted to obtain additional money from Plaintiff by stating that the Vessel could not be delivered without Plaintiff paying an additional $787,000 for the Vessel. Belisle and/or Marinex falsely claimed that the market price of the Vessel had substantially increased beyond the original price and thus tried to convince Plaintiff that he was getting a great deal. Plaintiff could no longer be tricked.

37. Belisle, Marinex and MPN ceased all communications with Plaintiff and stopped responding to Plaintiff's calls, emails, and text messages, as well as formal demands and notices from Plaintiff's European attorney.

38. Plaintiff later learned that Mystic Powerboats and/or Cosker transferred the Vessel's Manufacturer's Certificate of Origin and Builder's Certificate to Belisle and/or Marinex. Subsequently, Belisle and/or Marinex began advertising Plaintiff's Vessel for sale on various yacht websites. A new buyer was secured.

39. Upon information and belief, Belisle and/or Marinex sold the Vessel to a buyer in Miami, Florida for just $1.5 million.

40. Not only have one or more Defendants held Plaintiff's $1.813 million deposit, but now Belisle and/or Marinex also have secured another $1.5 million of pure profit for the same Vessel.

41. Plaintiff demanded that MPN and/or Defendants terminate the new sales transaction and refund his deposit by May 26, 2023 or, alternatively, deliver the Vessel with good and marketable title in exchange for a final payment of $777,000.[7]

42. MPN, Belisle, and Marinex ignored and did not respond to Plaintiff's demand.

43. Cosker and Mystic Powerboats advised Plaintiff that they are powerless to turn over the Vessel or to stop Belisle and Marinex from consummating the sale to a third-party buyer. As stated in a May 12, 2023 email authored by Cosker:

> Mark [Belisle] … dumped the boat into Miami for $1.5MM and in the process stole a customer from me…. I'm disgusted with this whole situation that Mark has created. …. At this point, Mark Belisle has screwed both of us.[8]

44. Further, Cosker and/or Mystic Powerboats has advised Plaintiff that the Vessel is undergoing a change in paint color (for the new buyer) at the Mystic Powerboats' facility in DeLand. Upon information and belief, the third-party purchaser of the Vessel intends to take possession of the Vessel between June 7, 2023 and June 14, 2023.

---

[7] *See* May 4, 2023 Demand to Belisle, attached hereto as **Exhibit F** and May 17, 2023 Demand to MPN, attached hereto as **Exhibit G**.

[8] Cosker email (May 12, 2023), attached hereto as **Exhibit H**.

8

## COUNT I
## Injunctive relief

45. The allegations contained in Paragraphs 1 through 44 above are incorporated by reference as if fully set forth herein.

46. Plaintiff seeks an immediate, temporary restraining order to halt the transfer of the Vessel. Such an order simply maintains the status quo by keeping the Vessel at the Mystic Powerboats' DeLand factory/warehouse pending a final determination of the various parties' rights in the Vessel.

47. Defendants' plan to transfer possession of the Vessel to a third-party buyer will cause irreparable harm to Plaintiff by depriving Plaintiff of his rights in a custom-built, one-of-a-kind speedboat that was ordered and built to Plaintiff's exact specifications. The Vessel is unique and cannot be replaced by a like-kind speedboat on the open market.

48. There is a strong likelihood that Plaintiff will prevail on the merits of his claims against Defendants. Defendants were unjustly enriched by using Plaintiff's $1.813 million deposit to construct a custom, luxury Vessel, which they then sold to a third party for $1.5 million in pure profit.

49. The injunctive relief requested by Plaintiff will not adversely affect the public interest. The public interest is in no way served by allowing the kinds of unethical and fraudulent business practices that have resulted in Defendants converting a $1.813 million deposit by Plaintiff and then selling the security for that deposit—the Vessel—to another party.

50. The injury to Plaintiff of the Vessel's imminent sale vastly exceeds any transient inconvenience that Defendants may experience as a result of a temporary injunction. If a temporary restraining order is granted, the status quo will simply be maintained to protect

Plaintiff's rights. Defendants will not lose or risk any rights of their own by complying with an order to maintain the Vessel in DeLand, pending a judicial determination of its ownership.

51. For the same reason, no security is required for a temporary restraining order. The Vessel will not be moved or damaged as a result of an order maintaining the status quo. Defendants will not be deprived of Plaintiff's $1.813 million deposit, which they already possess, now will they lose the opportunity to resell the Vessel if the Court determines that they are entitled to do so.

52. Based on the irreparable harm cited above, and pursuant to Fed. R. Civ. P. 65, a temporary restraining order should issue barring Defendants from selling, transferring, or moving the Vessel until such time as the Court may judicially determine the parties' rights in the Vessel.

## COUNT II
### Unjust enrichment

53. The allegations contained in Paragraphs 1 through 52 above are incorporated by reference as if fully set forth herein.

54. Plaintiff conferred a benefit on one or more Defendants by having possession and use of Plaintiff's $1.813 million.

55. One or more Defendants voluntarily accepted and retained this benefit.

56. Defendants failed or refused to provide the Vessel in exchange for Plaintiff's payment.

57. It would be inequitable for Defendants to retain Plaintiff's $1.813 million deposit while simultaneously depriving Plaintiff of the Vessel and selling the Vessel to a third-party buyer.

## COUNT III
### Money had and received

58. The allegations contained in Paragraphs 1 through 57 above are incorporated by reference as if fully set forth herein.

59. The purpose of Plaintiff's $1.813 million deposit was to pay for and securitize the purchase of the Vessel.

60. Defendants knew of the payment and its purpose.

61. Defendants in bad faith retained the payment and refused to provide the Vessel.

62. Defendants' above-described conduct is unreasonable and unconscionable.

63. Defendants have unjustly deprived Plaintiff of the Vessel and $1.813 million.

64. In equity and good conscience, Defendants must return Plaintiff's $1,813,000 deposit.

## COUNT IV
### Conversion

65. The allegations contained in Paragraphs 1 through 64 above are incorporated by reference as if fully set forth herein.

66. Defendants' improper exercise of dominion over Plaintiff's funds constitutes conversion.

67. Plaintiff has immediate possessory and ownership rights to his deposit.

68. Defendants have wrongfully received Plaintiff's deposit with the intent to exercise ownership inconsistent with Plaintiff's right of possession.

69. Plaintiff has demanded a return of his deposit but Defendants have refused to refund the deposit or deliver the Vessel.

70. Defendants have wrongfully asserted dominion over the $1,813,000 deposit belonging to Plaintiff and deprived Plaintiff of his ownership rights and dominion over those funds.

71. The funds are capable of identification.

72. Defendants' unlawful taking of Plaintiff's funds has caused Plaintiff to suffer damages.

73. In equity and good conscience, Defendants must return Plaintiff's $1,813,000 deposit.

## COUNT V
### Civil conspiracy to defraud

74. The allegations contained in Paragraphs 1 through 73 above are incorporated by reference as if fully set forth herein.

75. Defendants participated in a fraudulent scheme in which they induced Plaintiff to transfer $1.813 million to Defendants for the purpose of constructing a Vessel with no intent to sell the Vessel to Plaintiff.

76. In furtherance of the conspiracy, Belisle and/or Marinex worked together with MPN to mispresent MPN's role as a licensed Mystic broker, to inflate the sale price of the Vessel, and to conceal Belisle and/or Marinex' role in the transaction.

77. In furtherance of the conspiracy, Belisle and/or Marinex induced MPN to transfer Plaintiff's $1.813 million deposit to Belisle and/or Marinex, without Plaintiff's knowledge, so that Belisle and/or Marinex would obtain legal title to the Vessel.

78. In furtherance of the conspiracy, Belisle and/or Marinex then conspired with Cosker and/or Mystic Powerboats to use Plaintiff's $1.813 million to construct a luxury, one-of-a-kind powerboat that they could then sell on the open market for pure profit.

79. Defendants then did conspire to sell the Vessel to a third-party buyer, without informing or advising Plaintiff, for $1.5 million.

80. In furtherance of this conspiracy, Defendants knowingly made multiple false statements to Plaintiff about the value of the vessel and their concealed intentions to sell the Vessel to a third party.

81. In furtherance of this conspiracy, Defendants also induced and/or facilitated false statements by non-party MPN regarding the use of Plaintiff's deposit, the value of the vessel, MPN's relationship with Mystic Powerboats, and MPN's intentions with the contract.

82. Defendants knew the aforementioned statements were untrue when they made them, and intentionally made untrue and false statements to induce Plaintiff to part with $1.813 million.

## **PRAYER**

WHEREFORE, Plaintiff respectfully requests that this Court enter a temporary restraining order against Defendants, enjoining them from selling or transferring the Vessel until a judicial determination of the parties' rights is made. Plaintiff further requests judgment against all Defendants, jointly and severally, as follows:

(a) possession of the Vessel and performance of the agreement to construct and deliver the Vessel to Plaintiff;

(b) damages in the amount of Plaintiff's actual damages sustained;

(c) reasonable attorneys' fees and costs incurred by Plaintiff;

(d) trial by jury on all issues so triable;

(e) pre- and post-judgment interest; and

(f) all other relief to which Plaintiff is or may be entitled.

Respectfully submitted,

FROST BROWN TODD LLP

/s/ *Samuel W. Wardle*
Samuel W. Wardle (swardle@fbtlaw.com)
Florida State Bar No. 0105630
400 West Market Street, 32nd Floor
Louisville, Kentucky 40202-3363
Phone: (502) 589-5400 | Fax: (502) 581-1087
Courtney B. Gahm-Oldham (coldham@fbtlaw.com)
Texas State Bar No. 24074240

*pro hac vice pending*
4400 Post Oak Parkway, Suite 2850
Houston, Texas 77027
Phone: (713) 590-9300 | Fax: (713) 590-9399
***Counsel for Plaintiff Andrew Budzinski***

## **VERIFICATION**

I, Andrew Budzinski, hereby declare under penalty of perjury that I have read the foregoing Complaint and that the factual statements contained therein are true to the best of my knowledge, information, and belief.

Executed this 2nd day of June, 2023.

_____

Andrew Budzinski

0152475.0770786  4863-2071-4088v1